UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                       CASE NO. 06-10609

LILLIE ANN JOHNSON                                     SECTION "B"

    DEBTOR                                                             CHAPTER 7

## MEMORANDUM OPINION

This matter came on for hearing on November 9, 2007 on the United States Trustee's motion for examination of transactions with the debtor's attorney (P-19).[1] For the reasons set forth below, the court finds that attorney Christian D. Chesson ("Chesson") violated 11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure 2016. The court also finds that Chesson shall refund $575 to the debtor for failure to provide all of the services called for in the contract between them.

**I.**    **Background Facts**

The petition for relief under Chapter 7 of the Bankruptcy Code in this case was filed on June 30, 2006 on behalf of Lillie Ann Johnson ("debtor") by attorney Christian D. Chesson ("Chesson"), or at least by someone in his office. The meeting of creditors was initially scheduled to be held on July 28, 2006 but was rescheduled to September 22, 2006, apparently at the request of Mr. Chesson's office.[2] It is undisputed that no attorney appeared to represent the

---

[1] The office of the U.S. Trustee and Mr. Chesson tried to work out this matter amicably, but when that failed the case was submitted for a decision in March 2008.

[2] Exhibit UST-10; Case docket at pleading 4. Pleading numbers in the docket will hereinafter be referred to in the following form: (P-4). Mr. Chesson testified that the 341 meeting had been rescheduled at the debtor's request, but the debtor testified that she had not requested that the meeting be rescheduled. Given that Chesson had two other cases set for 341 meetings on the same date as the initial 341 meeting in this case, and that there were requests made to reschedule all three of those cases, not just this debtor's, the court believes that it was Chesson's

debtor at the meeting of the creditors and that the meeting took place on September 22, 2006 with the debtor present but unrepresented.[3]  Despite this, it appears from the record that the case proceeded without further incident.  An order of discharge was entered on November 24, 2006, and the case was closed on November 27, 2006.[4]

On August 16, 2007 the Office of the U.S. Trustee ("UST") filed a motion to reopen the case for the purpose of examining the debtor's transactions with her attorney.  The UST alleges that Chesson did not properly disclose the fee he had received from the debtor as required by 11 U.S.C. § 329 and Federal Rule of Bankruptcy Procedure 2016, that Chesson did not properly perform the services he contracted to provide the debtor, that Chesson violated the fee sharing provision found in § 504 of the Bankruptcy Code, and that Chesson violated various provisions of the Louisiana Code of Professional Conduct for attorneys.  Four witnesses testified at the hearing that was held.  Chesson testified that he had not disclosed all of the compensation he had received from the debtor, and that he had paid another attorney who was not affiliated with his office $50 to attend the meeting of the creditors in his place.  Chesson further testified that he had paid other attorneys to represent his clients at 341 meetings in as many as 50 other cases.  The attorney Chesson hired to represent the debtor in this case, Michael Collins, testified that he had appeared at 341 meetings a handful of times over the years and considered himself capable of handling such representation.  Collins also testified that because the 341 meeting had been moved to a different location the morning of the meeting, he had trouble finding the new location and was

---

office that made the request, not the debtor.  See case numbers 06-10608 and 06-10610.

[3] (P-7).

[4] (P-12) & (P-14).

late for this debtor's meeting, which was over by the time he arrived. Evidently he did appear in time to represent the debtors in Chesson's other cases set for creditors' meetings that morning.[5]

## II. Legal Analysis

The U.S. Trustee argues that Chesson violated 11 U.S.C. § 504(a), the prohibition on fee sharing. Section 504(a) states:

> Except as provided in subsection (b) of this section, a person receiving compensation or reimbursement under section 503(b)(2) or 503(b)(4) of this title may not share or agree to share–
>
> (1) any such compensation or reimbursement with another person; or
> (2) any compensation or reimbursement received by another person under such sections.

Chesson testified that he arranged in advance for Collins, an attorney who was not a member of Chesson's firm or an associate with his law office to meet the debtor and represent her at her section 341 meeting of creditors in exchange for a payment of $50. This certainly fits the definition of fee sharing. Section 504(a), however, applies only to persons receiving compensation or reimbursement under §§ 503(b)(2) or 503(b)(4) of the Bankruptcy Code. Section 503(b)(2) refers to compensation and reimbursement awarded under section 330(a) of the Code, which provides for the compensation of a trustee, examiner, or the trustee's and committee's professional employed under §§ 327 or 1103. Section 503(b)(4) allows compensation for certain professional services incurred by an entity whose expenses are allowable under § 503(b)(3), which allows expenses for creditors making a substantial

---

[5] Exhibit UST-1; the other cases in which Chesson was the attorney of record that were scheduled for 341 meetings that same day, but were represented instead by Collins were 06-10610 and 06-10608. Exhibit UST-1 also contains a transcript of the 341 meeting for another client of Chesson's that was represented by Collins, case number 06-10484, but that meeting was held on July 3, 2007, which is not the same date as the other three cases.

contribution to the estate and the expenses of committee members. In the case before the court, however, Chesson received payment from the debtor pre-petition as a fee for filing the bankruptcy case and agreeing to perform certain services for that fee. He did not apply for payment under §§ 330 or 503. Following the labyrinthine language of the above mentioned code sections to their end reveals that the payment Chesson received from the debtor prior to the commencement of the case is not compensation or reimbursement under either § 503(b)(2) or § 503(b)(4), and thus the payment he later made to Collins (or attempted to make) does not fall under the prohibitions on fee sharing set forth in § 504(a).[6]

The U.S. Trustee also argues that Chesson violated 11 U.S.C. § 329(a) along with Federal Rule of bankruptcy Procedure 2016. Section 329(a) states:

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

Rule 2016(b) entitled "Disclosure of Compensation Paid or Promised to Attorney for Debtor," states:

> Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share any compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment

---

[6] The power to review compensation arrangements for prior periods does not exist under section 504. To the contrary, by referencing subsections 503(b)(2) and (4), section 504 is explicitly limited to compensation paid from the estate. 4 Collier on Bankruptcy ¶ 504.02[1][c] (15th Ed. Rev.).

4

or agreement not previously disclosed.

In this case Chesson filed a Disclosure of Compensation of Attorney for Debtor stating that he has received $500 in compensation from the debtor. The disclosure further stated that he "had not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm."[7] The contract signed by the debtor on January 19, 2006 stated that the debtor agreed to pay Chesson $1,024 for his services.[8] Both the debtor and Chesson testified that the debtor paid Chesson a total of $1, 024. Chesson never amended the Rule 2016 disclosure, although at the hearing on this matter, he did ask to verbally amend the disclosure to reflect the fact that he had in fact received $1,024 from the debtor instead of $500. Despite Chesson's belated verbal amendment of the disclosure of compensation at the hearing, the court finds that Chesson violated the disclosure provisions of § 329 of the Bankruptcy Code and Bankruptcy Rule 2016. He did not disclose the full amount he received from the debtor until well after the U.S. Trustee had began his investigation into this matter.

Although Chesson employs 12 non-lawyers, he testified that he is the only attorney at his law office, and that he has no associates. Thus, when he is unable to appear on behalf of one of his clients, he makes it a practice to engage one of a handful of attorneys whom he knows to represent the clients for him.[9] He further testified that his practice was to pay the substitute attorney $50 for each half hour of work spent attending a creditors meeting. Chesson stated that

---

[7] (P-1).

[8] Exhibit UST-8. The date on the contract is January 19, 2005, but the parties agree that it was actually signed in 2006.

[9] In the case before the court, the attorney Chesson hired was Collins. Chesson testified that there were three or four attorneys that he regularly hired to represent his clients at 341 meetings and other hearings.

his practice was to arrange for another attorney to represent his clients at their 341 meetings only if the client consented to such representation ahead of time. He further stated, and was supported by the copy of his client contract for services that was entered as evidence, that in his contract for services there was a clause stating, "I further understand that with regard to all the court appearance(s), if the Bankruptcy Clinic (Chesson's law office) hires a contract attorney to appear on my behalf, that I/we have no objections to being represented at such a proceeding by such contract attorney." Chesson did not disclose this arrangement on the disclosure statement he submitted to the court in this case. Nor did he disclose this arrangement to the court in the other cases that the court examined as a result of this hearing.[10]

Chesson's testimony made it clear to the court that he does not consider paying another attorney to represent his clients at 341 meetings or other hearing to be fee sharing. The court disagrees.[11] Chesson should have disclosed this arrangement in compliance with Rule 2016. If he did not know at the outset of the case that he would be engaging another attorney to represent his clients, then he should have amended his initial disclosure within 15 days of the date that he did in fact engage another attorney to represent the client as required by Rule 2106. By failing to do so, Chesson further violated Rule 2016.

Because of the manner in which the Bankruptcy Code is drafted, and as discussed above, there is no explicit provision prohibiting the sharing of fees paid to an attorney before the commencement of a case.[12] Rule 2016 provides only that the attorney must disclose the sharing

---

[10] See case numbers 06-10608, 06-10610 and 06-10484.

[11] *In re Greer*, 271 B.R. 426 (Bankr.D.Mass. 2002).

[12] It is not clear in this case when or even if the $50 was ever paid. Collins testified that he did not take the $50 for attending the hearing (Johnson's) that he missed by being late.

6

of those fees. The court takes this requirement very seriously. As shown by the facts of this case, where an attorney decides to farm out his responsibilities to another attorney he has hired to represent his client at a 341 meeting or other hearing, it is generally the client who suffers if a problem arises.

Here, the debtor was called the morning of her 341 meeting by Chesson's office and asked and/or told that another attorney would be representing her. Chesson testified that he only engaged another attorney to represent his clients with their consent, but the court has serious doubts as to how consensual this sort of arrangement really is. In this case, the debtor, who was displaced by Hurricane Katrina, traveled to New Orleans for purposes of attending the 341 meeting. She is positive that she was called the morning of the meeting, and told that her attorney was unavailable.[13] It was not a realistic option for her to decline representation by the alternate attorney and reschedule the meeting to another date, which would necessitate another trip to New Orleans and presumably another day or more of missing work. This conclusion is bolstered by the fact that when she arrived for her 341 meeting only to find that the substitute attorney was not

---

Chesson, on the other hand, testified that he did pay Collins to appear at the 341 meeting, even the one he missed by being late. Chesson insisted, however, that he paid this out of his own funds because the fees that the debtor had paid were, in his terminology, "already used up."

[13] Chesson contends that it was his practice to notify his clients a day or two before if a substitute attorney is going to appear at the 341 meeting. His mother's testimony corroborated this testimony as to his general practice. This combined testimony as to his general practices does not outweigh the specific testimony of the debtor that on the morning of the meeting, Dawn in Chesson's office called her and told her that the meeting had been moved and that another lawyer would meet her. The debtor's testimony also indicated to the court that in her mind at least, having other counsel represent her was not something that she was asked about, but rather was told that she would be represented by another attorney.

7

present, she elected to go ahead with the meeting unrepresented rather than reschedule it.[14] The court finds that this type of treatment of a client by an attorney is not appropriate.

In addition to the problematic treatment of clients, the court finds further fault with the practice of engaging another attorney to represent a client when that other attorney is not formally enrolled as counsel. In a case such as this, where a substitute attorney fails to appear timely, or in a hypothetical case where a substitute attorney engages in questionable conduct, who is the client and the court supposed to look to as the responsible party? If a client were to have a serious problem with a substitute attorney's representation of her at a hearing, what is the client's remedy? While some of these questions are not before the court at this time, the court finds it best to clarify its policy regarding the representation of debtors by substitute attorneys who are not enrolled as counsel. No attorney shall represent a client in a case before this court, whether at an actual court hearing, or in a 341 meeting of the creditors, unless that attorney is enrolled as counsel of record or co-counsel, or is a partner or an associate at the firm of the attorney who is enrolled as counsel. Payment of a non-associate attorney for appearing at a 341 meeting or another hearing is prohibited unless that attorney has enrolled as co-counsel and a disclosure of that payment is made in accordance with Rule 2016.

Further, any attorney that finds himself in a situation where he absolutely cannot represent a client because of a scheduling conflict or for some other reason must obtain that client's consent to allow substitute counsel no less than 48 hours before the hearing or creditor's meeting. That consent must also be an actual consent. Telling a client that someone else will appear to represent the client is not equivalent to receiving consent. The situation must be explained to the client, and

---

[14] Contrary to Chesson's argument, the court does not take the debtor's decision not to reschedule the 341 meeting as proof that she was unaffected by the absence of her attorney.

the attorney must offer to reschedule the event as an alternative to the offer of substitute counsel.

The U.S. Trustee has also raised the issue of whether the services actually performed by Chesson were adequate to support the fee he received from the debtor. The court finds that they were not. Chesson's office performed for this debtor the function that the court would expect from a bankruptcy petition preparer, not an attorney. As such, the court finds that Chesson is entitled only to the fee that the court would allow a bankruptcy petition preparer, which is $150. Chesson received payments totaling $1,024 from the debtor. Of that amount, $299 went to pay the Chapter 7 filing fee. Thus Chesson received $725 for his services. Chesson must refund the excess $575 to the debtor.[15]

The U.S. Trustee has also asked for sanctions against Chesson for his practices. The purpose of sanctions is to serve as a deterrent to future conduct. At the hearing Chesson testified that he has stopped filing bankruptcy cases in this district, and at this time has only a handful of cases still pending that need to be finished and closed. Since the time of the hearing, it has come to the court's attention that Chesson has recently filed three new cases with this court.[16] Now that Chesson is aware that he is not permitted to engage other attorneys to represent his clients outside of the framework set out in this opinion, the court assumes he will adhere to the court's rules. Because Chesson decided to re-engage in the filing of bankruptcy cases in this district, the court hopes that he will be mindful of the prohibitions set forth above. If he fails to heed these prohibitions, then the court will take further appropriate action at that time.

---

[15] 11 U.S.C. § 329(b) allows the court to order the refund of any compensation that exceeds the reasonable value of the services provided.

[16] Case numbers 08-11944, 08-11946 and 08-11949 were all filed by Chesson on August 14, 2008.

The U.S. Trustee also raises various other examples of misconduct by Chesson and asks that the court examine Chesson's conduct under the Louisiana Rules of Professional Conduct. The state of Louisiana has an administrative body that is charged with regulating the ethical and professional conduct of attorneys in this state that is doubtless better equipped to handle these allegations by the U.S. Trustee. If the U.S. Trustee wishes to pursue this matter in that forum, the court has no objection, but in this case the court will not usurp the role of the Louisiana Attorney Discipline Board in regulating the conduct of attorneys in this state under the State's Rules of Professional Conduct.

### III. Conclusion

The court finds that Chesson violated 11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure 2016. The court orders that Chesson refund $575 to the debtor for failure to provide all of the services called for in the contract between them.

New Orleans, Louisiana, August 28, 2008.

*J. A. Brown*
Jerry A. Brown
U.S. Bankruptcy Judge